**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**MARY SEALS**                                                                                                         **PLAINTIFF**

**VS.**                                              **CASE NO. 3:14CV00302 PSH**

**CAROLYN W. COLVIN, Acting Commissioner,
      Social Security Administration**                                                        **DEFENDANT**

**ORDER**

Plaintiff Mary Seals ("Seals"), in her appeal of the final decision of the Commissioner of the Social Security Administration (defendant "Colvin") to deny her claim for Disability Insurance benefits (DIB) and supplemental security income (SSI), contends the Administrative Law Judge ("ALJ") erred: (1) in failing to resolve a possible conflict between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT"); and (2) in determining her condition improved after June 1, 2012, to the point she no longer was disabled.  The parties have ably summarized the medical records and the testimony given at the administrative hearings conducted on July 16, 2012, and August 15, 2013.  (Tr. 220-245, 246-289).  Two hearings were conducted because the Appeals Council, in an April 2013 decision, remanded the case for further consideration.  (Tr. 318-320). The Court has carefully reviewed the record to determine whether there is substantial evidence in the administrative record to support Colvin's decision.  42 U.S.C. § 405(g).

**ALJ's failure to resolve conflict between vocational expert's testimony and DOT:** The ALJ called a vocational expert, Dwight Turner ("Turner"), at the second administrative hearing. Turner agreed to indicate if his testimony differed at any juncture from the DOT. (Tr. 282). The ALJ then posed a hypothetical question, asking Turner to assume, among other things, the worker would be limited in her non-dominant upper extremity[1] "to lifting up to 10 pounds and would be unable to perform overhead reaching. . ." (Tr. 285). In addition, such a worker could only occasionally perform work requiring fingering and handling with her left hand. Turner sought clarification of the ALJ's hypothetical, asking if the occasional fingering and handling would amount to two and a half hours in an eight-hour work day. The ALJ confirmed this calculation. Turner then inquired if the ALJ was, in essence, describing "almost one-handed work". The ALJ replied, ". . . let me specify. The non-dominant hand can be used as an assistive device up to the 10 pounds. It's just no overhead work." (Tr. 286). The ALJ again stated, "and let me clarify . . . [the non-dominant hand] can be used as an assistive device for up to 10 pounds. ...With no overhead using that non-dominant upper extremity." (Tr. 286). Turner then testified that such a worker could perform the jobs of cashier II, sales attendant, and document preparer. (Tr. 286-287). Turner twice stated in his answer that his answer accounted for "the clarification" given by the ALJ regarding the use of the non-dominant hand. (Tr. 286-287).

Colvin does not dispute that the three jobs cited by Turner require frequent reaching. Seals contends the ALJ erred by failing to identify an apparent conflict between the DOT and Turner's testimony, and in failing to elicit testimony from Turner explaining how Seals could perform these jobs. Seals cites *Moore v. Colvin*, 769 F.3d 987 (8th Cir. 2014), and *Kemp ex rel. Kemp v. Colvin*,

---

[1] Seals testified she was right-handed, so her non-dominant upper extremity is her left arm. (Tr. 224).

743 F.3d 630 (8th Cir. 2014), to support her argument. In *Moore*, the ALJ gave a hypothetical to the vocational expert that limited overhead reaching to "occasional." The vocational expert testified the claimant could do janitorial work and work in a restaurant as a cafeteria attendant clearing tables. These jobs, according to the DOT, require frequent reaching. The ALJ asked the vocational expert if her testimony was consistent with the DOT, and she confirmed this was the case. The case was remanded due to the ALJ's failure to resolve the conflict between the DOT and the vocational expert testimony. In *Kemp*, the vocational expert testified the claimant could perform the job of check-weigher. According to the DOT, this job requires constant reaching. Since the hypothetical question posed to the vocational expert presupposed a worker who could reach overhead only occasionally, there was a conflict between the vocational expert evidence and the DOT. The Court found "the record does not reflect whether the VE or the ALJ even recognized the possible conflict" between the expert testimony and the DOT. 743 F.3d at 633. "Further, the VE did not explain the possible conflict and the ALJ sought no such explanation." Id.

The *Moore* and *Kemp* decisions differ from the present circumstances in that the ALJ failed to recognize a possible conflict and failed to elicit testimony from the vocational expert dealing with the conflict. As noted herein, the ALJ and Turner explicitly discussed the limitations on Seals' use of her left arm and hand. As a result, those cases do not control the outcome of this case.

Further, Seals' argument fails because she does not establish that a conflict actually existed between Turner's testimony and the DOT. The jobs cited by Turner require frequent reaching. These jobs do not specify frequent reaching with both hands. The DOT defines reaching as "extending hand(s) or arm(s) in any direction." Seals' ability to frequently reach with her dominant, right hand and arm establishes her ability to perform these jobs. *See Hall v. Chater*, 109 F.3d 1255

3

(8th Cir. 1997) (claimant who could not perform finger work with her left hand could use her right hand to perform clerk jobs which required reaching, handling, or finger work).

In summary, the ALJ and Turner discussed the precise limitations of the hypothetical worker, and Turner's testimony clearly took into account those limitations. There is no error in the formulation of the hypothetical question or in the utilization of Turner's expert testimony.

**The ALJ erred in determining Seals was not disabled after June 2, 2012:** In the ALJ's first decision he found Seals to have the severe impairments of carpal tunnel syndrome and left shoulder rotator cuff syndrome. For the period from March 11, 2011, through June 2, 2012, the ALJ found Seals disabled due to her impairments and chronic pain, which rendered her unable to maintain attention and concentration for up to thirty percent of the workday. (Tr. 303-304). After remand, the ALJ issued a second ruling, finding severe impairments of carpal tunnel syndrome, left shoulder rotator cuff syndrome, fibromyalgia, and arthritis. (Tr. 200). The second ALJ decision also contained an updated residual functional capacity ("RFC") evaluation, with the ALJ stating Seals had the ability to perform light work[2] except: manually, she could use her right upper extremity for frequent fingering and handling; her left upper extremity would be limited to lifting up to 10 pounds and she would be unable to perform overhead reaching; her left upper extremity could be used as an assistive device for up to 10 pounds; and she could perform no climbing ladders, ropes and scaffolds, and could not crawl. (Tr. 203). Seals contends the second RFC conclusion reached by the ALJ is erroneous.

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. §416.967(b). In addition, "[l]ight work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10.

The RFC need not mirror the findings of any one physician, as the ALJ is not bound to choose any one physician and adopt his/her findings as the appropriate RFC.  Instead, it "is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations."  *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001).  And while the ALJ is to consider all relevant evidence, not all of the evidence is to be given equal value.  For example, a treating physician's medical opinions are given controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are not inconsistent with the other substantial evidence.  *See Choate v. Barnhart*, 457 F.3d 865, 869 (8th Cir. 2006) (internal quotations omitted).  The ALJ may discount or even disregard a treating physician's opinions if "other medical assessments are supported by better or more thorough medical evidence or where a treating physician renders inconsistent opinions that undermine the credibility of his opinion."  *See Id.* (internal quotations omitted).

Here, treating rheumatologist Dr. McCasland provided a May 2013 medical source statement, in checklist format, indicating Seals had the following abilities and limitations: lift and carry 20 pounds occasionally, 10 pounds frequently; stand and walk about 2 hours, sit about 6 hours in a workday; needs to change positions frequently, frequent rest periods, and opportunity to shift, at will, from sitting to standing/walking; does not need to elevate her feet or longer than normal breaks; able to reach, finger, and handle for 1/3 of 8 hour workday; and no environmental restrictions (e.g., extreme heat or cold, or fumes).  Dr. McCasland anticipated Seals' impairments would cause her to miss about one day a month from work, and opined the limitations would last for at least one year.  The limitations set forth by Dr. McCasland covered a period of less than two

5

months – from March 11, 2013 through May 7, 2013.  (Tr. 892-893).

As previously noted, a treating physician's opinion is given controlling weight if supported by the record and not inconsistent with the other substantial evidence.  In this instance, the ALJ assigned "little weight" to the opinion of Dr. McCasland "because of limited treatment prior to her opinion."  (Tr. 209).  The ALJ also noted that no treating medical source placed great limitations on Seals and there are no clinical findings in the record to support extreme limitation.  The ALJ erred in stating Seals was seen only once by Dr. McCasland, as the records show her to be seen twice prior to Dr. McCasland's medical source statement.  This error is not determinative, as the pertinent question is whether the ALJ validly discounted the opinion of Dr. McCasland.  Substantial evidence supports the ALJ's consideration of Dr. McCasland's opinion.

Significant medical events preceded Seals' first visit to Dr. McCasland on March 11, 2013. Seals had rotator cuff surgery in November 2011, followed by physical therapy.  Dr. Guinn, who performed the surgery, released Seals from therapy on May 9, 2012, with the following notation: "Mrs. Seals is about 6 months out.  She seems very pleased with her progress.  She was discharged from therapy and she has just started some home strengthening.  She states they told her she had met all her goals on her range of motion."  (Tr. 929).  Seals returned to Dr. Guinn a final time in August 2012, informing him that she'd like to have an injection in her shoulder.  Dr. Guinn wrote, "Her left shoulder was injected.  We will see how she does.  She will call with any problems."  (Tr. 929).

She presented as a new patient to Dr. McCasland in March 2013 complaining of diffuse joint pain.  This pain, according to Seals, responded well at first to Ibuprofen.  When the Ibuprofen became less effective, Seals indicated she switched to Alleve, which did not work as well.  Dr. McCasland noted a history of arthritis and rheumatoid arthritis, and assessed Seals with arthralgias

in multiple sites, carpal tunnel syndrome, cough, abnormal findings on immunology studies, and a skin rash. (Tr. 899). Dr. McCasland prescribed Tramadol with Alleve as needed. A follow-up appointment was scheduled.

About one month later, Seals returned to Dr. McCasland. The doctor noted the Tramadol "helps some", Seals was "very anemic", had symptoms of sleep apnea, had "pain pretty much all over", and her joints were not swollen. (Tr. 894). Dr. McCasland assessed her with arthralgias in multiple sites, anemia, and fibromyalgia, and planned a follow-up visit in six months or as needed. Dr. McCasland added Cymbalta to her medications. Noting her lack of funds, Dr. McCasland indicated she would try to get samples of the Cymbalta if the drug proved effective, and also noted Seals needed a sleep study but could not presently afford one. (Tr. 896). About three weeks after Seals' second visit, Dr. McCasland executed the medical source statement previously described.

The ALJ gave little weight to Dr. McCasland's opinion because of the absence of limitations imposed by treating physicians and because of the absence of clinical findings to support the opinion. There was no error in this regard. Dr. McCasland's treating notes do not suggest Seals would miss a day of work each month. While Seals' pain is noted, neither her pain or other symptoms (e.g., sleep apnea or anemia) are cited as disabling. Further, Dr. McCasland's opinion suggests Seals could occasionally lift 20 pounds and frequently lift 10 pounds and would not need longer than normal breaks at work, limitations which are consistent with the RFC found by the ALJ. The clinical findings and medical notes, in general, support the finding of disability during the closed period due to Seals' rotator cuff problem, which was resolved by June 2012. Although the new impairment of fibromyalgia was diagnosed after June 2012, Seals did not receive frequent

treatment from Dr. McCasland or others during the relevant period.[3]

Viewing the medical record as a whole, with particular emphasis on the notes written at the time the various physicians treated Seals, we find substantial evidence supports the ALJ's treatment of her fibromyalgia. Although she was diagnosed with and treated for fibromyalgia, the medical records do not provide specific examples of urgent treatment, nor do they suggest specific restrictions the impairment imposes on Seals beyond those imposed in the RFC found by the ALJ.

The RFC took into account Seals' impairments, limiting her to work which was not demanding on her left arm and hand, and which would not require climbing or crawling. The hypothetical question posed to Turner, the vocational expert, assumed a person of Seals' age and education (43 at the time of the first administrative hearing, with a high school education), with the ability to perform light work with the foregoing restrictions. In response, Turner testified that jobs were available to such a person. The jobs of cashier II, sales attendant, and document preparer were identified as appropriate for Seals. (Tr. 287). There was no error in the RFC determination and the subsequent use of the RFC in the hypothetical question posed to Turner, and no conflict between Turner's testimony and the DOT.

In summary, we find the ultimate decision of Colvin was supported by substantial evidence. We are mindful that the Court's task is not to review the record and arrive at an independent decision, nor is it to reverse if we find some evidence to support a different conclusion. The test is

---

[3] During the time prior to the ALJ's opinion on September 27, 2013, Seals was seen at the Great River Charitable Clinic for joint pain. (Tr. 945). After the ALJ's opinion, Seals saw Dr. McCasland once, in October 2013. Dr. McCasland "discussed fibromyalgia again today and told her she needs to continue to be mobile." (Tr. 189). Seals saw Dr. Harrison in October 2013 at NEA Baptist Clinic for pain. When Seals returned in November 2013 Dr. Harrison changed her medication, and Seals reported improvement with the new medicine. (Tr. 178-180).

whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this case.

  IT IS THEREFORE ORDERED that the final decision of Colvin is affirmed and Seals' complaint is dismissed with prejudice.

  IT IS SO ORDERED this 15th day of December, 2015.

_____
UNITED STATES MAGISTRATE JUDGE